```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| MUGIRANEZA EVARISTE,<br><br>          Petitioner,<br><br>  -vs-<br><br>WILLIAM P. BARR, U.S. Attorney General; DEPARTMENT OF HOMELAND SECURITY; THOMAS E. FEELEY, Field Office Director for Detention and Removal, Buffalo Field Office, Bureau of Immigration and Customs Enforcement; and JEFFREY J. SEARLS, Facility Director, Buffalo Federal Detention Facility,<br><br>          Respondents. | **No. 6:19-cv-06441-MAT**<br>**DECISION AND ORDER** |

## I. Introduction

Proceeding *pro se*, Mugiraneza Evariste, a/k/a Evariste Mugiraneza ("Mugiraneza") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the respondents (hereinafter, "the Government") challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). This is the second § 2241 petition Mugiraneza has filed challenging his immigration detention. In the first proceeding, *Mugiraneza v. Whitaker, et al.*, No. 6:19-cv-06140-MAT, 2019 WL 2395316 (W.D.N.Y. June 6, 2019) ("*Mugiraneza I*"), the Court dismissed the petition without prejudice with leave to refile should Mugiraneza experience a material change in circumstances warranting a new bond hearing.

In the present petition, Mugiraneza merely repeats the same Due Process and Eighth Amendment claims in his first petition, asserting–incorrectly—that he has never had an individualized bond hearing. As the Government points out, Mugiraneza again has failed to acknowledge that he *did* receive an individualized bond hearing before on February 1, 2017, before an immigration judge ("IJ") pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018), at which DHS bore the burden of proving by clear and convincing evidence that Mugiraneza was not entitled to release on bond. For the reasons discussed below, the Court denies Mugiraneza's request for a writ of habeas corpus. The petition (Docket No. 1) is dismissed with prejudice.

**II. Factual Background and Procedural History**

Mugiraneza, a native and citizen of the Democratic Republic of Congo ("DRC"), was admitted to the United States at New York, New York, on or about September 24, 2014, as a refugee (RE-2).

On October 3, 2015, the City of Syracuse Police Department arrested Mugiraneza for Assault in the Second Degree (intent to cause serious physical injury) in violation of New York Penal Law ("P.L.") § 120.05(1). P.L. § 120.05(1) is a class D felony and an offense for which a sentence of imprisonment of one year or longer is authorized. According to the police report filed, Mugiraneza entered his estranged wife's apartment without permission, hit and kicked her repeatedly about the head and neck, causing a fracture

of one of her cervical vertebrae. An Onondaga County grand jury subsequently indicted Mugiraneza on four counts: Assault in the Second Degree in violation of P.L. § 120.05(1), Unlawful Imprisonment in the First Degree in violation of P.L. § 135.10, Criminal Possession of Stolen Property in the Fourth Degree in violation of P.L. § 165.45(2), and Petit Larceny in violation of P.L. § 155.25.

On March 3, 2016, Mugiraneza pleaded guilty in Onondaga County Court to P.L. § 120.05(1) in full satisfaction of the indictment. On May 13, 2016, he was sentenced principally to 5 years' probation.

On June 24, 2016, United States Immigration and Customs Enforcement ("ICE") arrested Mugiraneza at the Onondaga County Probation Office. ICE determined to retain him in custody.

On July 1, 2016, DHS issued a Notice to Appear ("NTA"), charging Mugiraneza with being removable under 8 U.S.C. § 1227(a)(2)(A)(i) as an alien convicted of a crime involving moral turpitude committed within five years after his admission to the United States for which a sentence of one year or longer could be imposed.

On February 1, 2017, Mugiraneza had a custodial determination hearing before an immigration judge ("IJ") pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated* 138 S. Ct. 1260 (2018) ("*Lora*"). The IJ denied Mugiraneza's request to change his

custodial status, finding that DHS had established by clear and convincing evidence that he is a danger to the community. Mugiraneza appealed the denial of bond to the Board of Immigration Appeals ("BIA"). On May 4, 2017, the BIA dismissed his appeal, concluding that the IJ did not err in finding that the DHS demonstrated by clear and convincing evidence that Mugiraneza poses a danger to the community.

On May 30, 2018, an IJ issued an order stating Mugiraneza was removable as charged. The IJ found Mugiraneza statutorily ineligible for asylum or withholding of removal because his offense was a "particularly serious crime" and, even if the offense were not a "particularly serious crime," Mugiraneza did not carry his burden of proof for demonstrating entitlement to asylum, withholding of removal, or protection under the Convention Against Torture ("CAT"). In addition, the IJ concluded that even if Mugiraneza qualified for asylum, the IJ would deny asylum in the exercise of his discretion. With respect to Mugiraneza's application for adjustment of status under INA § 209(a) pertaining to those admitted to the United States under 8 U.S.C. § 1157 as refugees, the IJ determined that, in light of his criminal conviction, Mugiraneza required a discretionary waiver of inadmissibility. However, the IJ found, Mugiraneza did not qualify for such a waiver. The IJ also denied Mugiraneza's application to adjust his status under INA § 209(a) as a matter of discretion. The

IJ accordingly ordered that Mugiraneza be removed to the DRC. Mugiraneza appealed to the BIA, which dismissed his appeal on October 26, 2018.

On October 30, 2018, Mugiraneza refused to complete a travel document application for the DRC Embassy. Consequently, he was placed in "failure to comply" status. Also on October 30, 2018, DHS served Mugiraneza with an I-229, Warning for Failure to Depart and Notice, informing him that he was legally required to assist in his removal.

On November 7, 2018, DHS issued a Warrant of Removal/Deportation for Mugiraneza and requested that the DRC issue a passport or other suitable travel document for him.

On November 19, 2018, Mugiraneza was served with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g).

In the meantime, on November 15, 2018, Mugiraneza filed a *pro se* petition for review of the BIA's decision with the United States Court of Appeals for the Second Circuit ("Second Circuit"), along with a motion for a stay of removal and a motion to appoint counsel. The Government opposed the stay motion and filed a supplement with exhibits on November 26, 2018.

On January 9, 2019, DHS served Mugiraneza with another I-229, Warning for Failure to Depart and Notice.

On January 16, 2019, DHS received a travel document for Mugiraneza's removal from the DRC Embassy and took Mugiraneza out of failure to comply status.

On February 12, 2019, after DHS obtained a travel document for Mugiraneza, the Government asked the Second Circuit to expedite adjudication of the stay motion.

On or about February 20, 2019, DHS issued and served on Mugiraneza a Decision to Continue in Custody. Prior to this decision, Mugiraneza had acquired at least two separate disciplinary reports at the Buffalo Federal Detention Facility based on three violations (possessing of anything not authorized on July 5, 2018; lying or providing a false statement to a staff member on July 27, 2018; and fighting, boxing, sparring, or wrestling, etc. on July 27, 2018).

On February 13, 2019, Mugiraneza filed his first habeas petition in *Mugiraneza I*, asserting that his "prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment's Excessive Bail Clause." He requested that this Court determine that his detention is not justified because the Government has not established by clear and convincing evidence that he presents a risk of flight or danger in light of available alternatives to detention, and order his release, with appropriate conditions of supervision if necessary, taking into account his ability to pay a

bond. In the alternative, he requested that this Court order his release within 30 days unless the Government scheduled a hearing before an IJ at which the Government bore the burden of proof.

On February 28, 2019, the Second Circuit granted the Government's motion to expedite, granted Mugiraneza's motion to stay his removal, and granted his motion for assignment of *pro bono* counsel.

On June 6, 2019, the Court issued a Decision and Order dismissing the petition in *Mugiraneza I* without prejudice with leave to refile should Mugiraneza experience a material change in circumstances warranting a new bond hearing. Judgment was entered on June 7, 2019.

On June 13, 2019, Mugiraneza commenced the instant habeas proceeding, reasserting the same claims raised in *Mugiraneza I*. On June 20, 2019, the Court issued an Order (Docket No. 2) administratively closing the case due to Mugiraneza's failure to pay the filing fee or file a properly supported motion for leave to proceed *in forma pauperis*. Mugiraneza subsequently paid the $5 filing fee and, on July 8, 2019, the Court ordered that the Petition be served on the named Respondents, who were directed to answer. *See* Docket No. 5.

Mugiraneza also filed a Motion to Appoint Counsel (Docket No. 4) and Motion for Leave to Proceed *In Forma Pauperis* (Docket

No. 3). He subsequently submitted letters (Docket No. 8) from various individuals supporting his request for release on bond.

The Government filed a Response (Docket No. 9) to the Petition, along with various exhibits (Docket Nos. 9-1, 9-2, 9-3), and a Memorandum of Law (Docket No. 9-4).

On September 6, 2019, Mugiraneza filed a Reply (Docket No. 10) to the Government's Response.

On September 30, 2019, Joseph Moravec, Esq. filed a Notice of Appearance (Docket No. 11) on behalf of Mugiraneza. However, Attorney Moravec has not filed any pleadings on his client's behalf.

**III. Scope of Review**

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district

courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

## IV. Discussion

### A. The Due Process Claim

The Petition's First Claim for Relief, *see* Petition ("Pet.") ¶¶ 36-39, asserts that his "ongoing detention without a hearing violates due process." *Id.* ¶ 39. Mugiraneza asserts that "[t]o justify [his] ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that [his] detention is justified by clear and convincing evidence of flight risk or danger. . . ." *Id.* ¶ 38.

To the extent Mugiraneza contends that he has never been afforded an individualized bond hearing, he is incorrect. As noted above, he received a *Lora* bond hearing on February 1, 2017, before an IJ. At that time, Mugiraneza was considered to be detained pursuant to 8 U.S.C. § 1226(c) ("§ 1226(c)").[1] In *Lora*, the Second Circuit held that § 1226(c) "must be read as including an implicit temporal limitation" in order to avoid "serious constitutional concerns" raised by indefinite detention. 804 F.3d at 614. Adopting the Ninth Circuit's bright-line rule, *Lora* held that an alien

---

[1] The Government points out that some documents in Mugiraneza's DHS file refer to his detention as being pursuant to § 1226(c) (which provides for mandatory detention of certain criminal aliens). However, because his criminal sentence ultimately did not include a term of imprisonment of one year or longer (requiring mandatory detention pursuant to § 1226(c)), his detention is pursuant to § 1226(a), which "creates a default rule for [aliens already present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018). Section 1226(a) also permits the Attorney General to release those aliens on bond, '[e]xcept as provided in'" § 1226(c). *Id.* at 847 (alteration in original).

-10-

detained pursuant to § "1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention," 804 F.3d at 616 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1132-33 (9th Cir. 2013)). The Second Circuit also followed the Ninth Circuit in holding that the alien "must be admitted to bail unless the government establishes by clear and convincing evidence that [he or she] poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616 (citing *Rodriguez*, 715 F.3d at 1131; footnote omitted).

At Mugiraneza's bond hearing, the IJ "recognize[d] that *Lora* altered the burden of proof and evidentiary standards in bond hearings by shifting the burden from the alien to establish he does not pose a risk of danger to the community and does not pose a flight risk to DHS to establish an alien should not be released on bond. Under *Lora*, an Immigration Judge . . . 'must' set bond 'unless the Government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community.'" Bond Memorandum dated February 16, 2017.

The IJ then observed that *Lora* "did not alter" the well-settled BIA precedent regarding the factors to be considered, such as the extent of the alien's criminal record and the recency and seriousness of his criminal activity. *Id.* The IJ explained that he considered the records pertaining to Mugiraneza's criminal conviction and ensuing order of restraint, which indicated that he

inflicted "very serious injuries" on the victim (i.e., facial lacerations and a spinal fracture which necessitated the victim wearing a neck brace). *Id.* The IJ also considered Mugiraneza's refusal to accept culpability and his "testimony in which he asserted that the assault had been a 'fabrication' by the victim." *Id.* Although the IJ noted that Mugiraneza's had submitted letters of support from members of the community, the "bond record was notably devoid of any statement" from the victim "indicating that the events that formed the basis of [Mugiraneza]'s conviction were merely a fabrication." *Id.* The IJ also considered the information in the police report that the incident at issue was not the first time Mugarineza had been abusive towards the victim. The IJ held that after "thorough consideration of the evidence, including the respondent's criminal record, the seriousness of his offense, and the severity of the injuries sustained by the victim," DHS had "met its burden of showing by clear and convincing evidence that Respondent is a danger to the community." Accordingly, the IJ denied Mugiraneza's request for bond.

On appeal, the BIA affirmed the IJ's decision on the *Lora* bond determination, finding that Mugiraneza's "criminal record, showing that he severely beat his wife causing her serious physical harm, supports the . . . determination that the DHS met its burden to show by clear and convincing evidence that [Mugiraneza] is a danger to the community. As this issue is dispositive, the [BIA] need not

address the additional issue of whether [Mugiraneza] poses a risk of flight." BIA Order dated May 4, 2017. The BIA rejected Mugiraneza's argument on appeal that the existence of a past criminal record is not necessarily sufficient to meet the Government's burden pursuant to *Lora*,[2] especially since "his wife, who was the victim of his 'sole indiscretion,' wrote a letter to the [IJ] in support of [him], indicating that he is not a threat to her" and "several members of the Congo local community" submitted letters "that he is not a threat to the community." *Id.* The BIA found that these letters "do not negate the evidence demonstrating the violence of [Mugiraneza's] assault of his wife." *Id.*

As the foregoing procedural history demonstrates, Mugiraneza's second Petition rests on the same incorrect factual premise on which his first Petition rested—that he did not receive an individualized bond hearing. What is more, Mugiraneza enjoyed the benefit of having the burden of proof allocated to the Government under then-controlling Second Circuit precedent in *Lora*, *supra*. The Supreme Court "has placed the burden on the Government to justify civil detention or the deprivation of other constitutional rights by making a showing of at least clear and convincing evidence."

---

[2] On March 5, 2018, a little less than a year after the BIA's affirmance of the denial of bond, *Lora* was vacated, based on the Supreme Court's decision in *Jennings,* 538 138 S. Ct. 830. *See Shanahan v. Lora*, 138 S. Ct. 1260 (2018) (reversing and remanding Second Circuit decision for further consideration in light of *Jennings*). On remand in *Lora*, the Second Circuit did not consider the issues raised by the Supreme Court because, during the pendency of the appeal, the petitioner had received cancellation of removal. Therefore, the case became moot. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018).

*Sajous v. Decker*, No. 18-CV-2447(AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) (citing *Zadvydas*, 533 U.S. at 692; *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); other citations omitted). That was the standard applied by the IJ case at Mugiraneza's bond hearing. Thus, Mugiraneza cannot demonstrate that he was denied Due Process at the *Lora* bond hearing.

Once an IJ has made an initial bond redetermination, a detainee being held pursuant to § 1226(a) may request a subsequent bond redetermination. Such a request must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e). Here, there is no suggestion that Mugiraneza sought a bond redetermination hearing pursuant to 8 C.F.R. § 1003.19(e) between June 6, 2019, the date the Court denied his first Petition, and June 13, 2019, the date he signed his second Petition. Nowhere in his Petition or in his Reply does Mugiraneza assert that he has experienced materially changed circumstances. Rather, Mugiraneza relies on cases involving detention pursuant to 8 U.S.C. § 1226(c), which does not provide for any type of individualized bond hearing, in contrast to § 1226(a), and argues that his detention since the *Lora* hearing has become unreasonably long. He asserts that under the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), he is entitled to a second bond hearing. In Mathews, the Supreme Court articulated a three-part test to determine

whether established procedures provide constitutionally sufficient due process. 424 U.S. at 334-35. District courts have applied *Mathews* to habeas petitions involving noncitizens who were detained under § 1226(a), who, like Mugiraneza, had already received a constitutionally sufficient bond hearing and were seeking a second hearing. *See*, *e.g.*, *Viramontes-Gomez v. Nielsen*, No. 18-935, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018), *report and recommendation adopted*, 2018 WL 6107293 (W.D. Wash. Nov. 21, 2018); *Soto v. Sessions*, No. 18-2891, 2018 WL 3619727, at *3-*5 (N.D. Cal. July 30, 2018). On the facts of this case, the Court concludes that due process does not require an additional bond hearing at this time.

To determine the specific dictates of due process in a given situation, *Mathews* requires consideration of (1) the private interest affected by government action; (2) the government's interest, including the function involved and the burdens that additional or alternative procedures would entail; and (3) the risk of an erroneous deprivation of the private interest through the procedures used, and the probable value, if any, of additional or alternative procedures. *Mathews*, 424 U.S. at 334-35; *accord*, *e.g.*, *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).

Turning to the first factor, Mugiraneza's freedom from detention is at stake, which is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It has been approximately two years and eight months since his last bond hearing, a significant length of time.

At the same time, the government has legitimate and important interests in continuing to detain Mugiraneza. In particular, detention assures that he will appear if ultimately ordered removed and protects the community as a whole (and his estranged wife) from him given his criminal history of domestic violence. As to the third factor, Mugiraneza already has received an individualized bond hearing before a neutral judge[3] at which the Government bore the burden of proving by clear and convincing evidence that he was a danger to the community and thus not entitled to bond. Thus, the procedures used are those that this Court and numerous others have held are constitutionally required in order to mitigate the risk of an erroneous deprivation of an alien's liberty interest. Mugiraneza has made no showing of circumstances that would justify a different custody determination at this time, which leads the Court to conclude that no value would be added by holding another bond hearing. Weighing the three *Mathews* factors, the Court concludes that Mugiraneza has received all of the due process protections to

---

[3] Immigration judges are part of the Executive Office for Immigration Review ("EOIR"), which is a component of the Department of Justice ("DOJ"). ICE is a part of DHS, and both are "entirely separate" from the DOJ and EOIR. In proceedings before an IJ or the BIA, DHS is deemed to be a party and is represented by ICE. *See* Immigration Court Practice Manual, Ch. 1, § 1.2 (DOJ July 30, 2019), available at https://www.justice.gov/eoir/page/file/1189481/download.

which he is entitled at this time. Accordingly, the Court dismisses his Fifth Amendment claim as without merit.

B. **The Eighth Amendment Claim**

In his second claim for relief, Mugiraneza asserts that his prolonged detention violates the Eighth Amendment which prohibits "excessive bail." Pet. ¶ 41 (quoting U.S. CONST., amend. VIII). The Eighth Amendment states, "Excessive bail shall not be required . . . ." U.S. CONST., amend. VIII. The Excessive Bail Clause does not "accord a right to bail in all cases, but merely [provides] that bail shall not be excessive in those cases where it is proper to grant bail." *Carlson v. Landon*, 342 U.S. 524, 545 (1952); *see also Leader v. Blackman*, 744 F. Supp. 500, 509 (S.D.N.Y. 1990) ("It is well settled that bail may be denied under many circumstances, including deportation cases, without violating any constitutional rights."). As Mugiraneza fails to point to any authority establishing that it is proper to grant him bail under the Eighth Amendment, the Court denies this claim. *Banda v. McAleenan*, 385 F. Supp.3d 1099, 1121 (W.D. Wash. 2019).

V. **Conclusion**

For the foregoing reasons, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed. The Motion to Appoint Counsel is denied as Moot. The Motion for Leave to Proceed *In Forma Pauperis* is denied as moot, Petitioner having

already paid the filing fee. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   November 4, 2019
         Rochester, New York.